1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                          SAN JOSE DIVISION

7

8    BAMBU FRANCHISING, LLC,                    Case No.  5:21-cv-00512-EJD

                        Plaintiff,
9                                               **ORDER GRANTING IN PART**
          v.                                    **MOTION FOR PRELIMINARY**
10                                              **INJUNCTION**
     JENNY NGUYEN, et al.,
11                                              Re: Dkt. No. 20
                        Defendants.
12

13          This is an action for trade secret misappropriation, breach of contract, and unfair

14   competition relating to proprietary recipes for a Vietnamese beverage business.  Plaintiff Bambu

15   Franchising, LLC ("Plaintiff" or "Bambu Franchising") seeks a preliminary injunction against all

16   Defendants.  Dkt. No. 20.  Defendants have filed oppositions (Dkt. Nos. 23, 48), and Plaintiff filed

17   reply briefs (Dkt. No. 29, 52).  The matter was heard on May 6, 2021.  For the reasons stated

18   below, the motion for preliminary injunction is GRANTED in part.

19   **I.      BACKGROUND**

20          **A.      The Complaint**

21          Defendant Jenny Nguyen ("Jenny"), a California resident, is one of four sisters who

22   founded Bambu Desserts and Drinks Restaurants, a chain of Vietnamese fast casual restaurants

23   that sell proprietary Vietnamese dessert beverages, teas, and coffee to the public utilizing

24   exclusive systems and confidential recipes for unique ingredients (the "Bambu Business").  The

25   founders operated the Bambu Business through Bambu Desserts and Drinks Franchise, Inc.,

26   Bambu Desserts and Drinks, Inc., and Bambu IP, LLC. (collectively referred to as the "Selling

27

United States District Court
Northern District of California

1    Parties").  The Nguyen Family[1] sold licenses to operate Bambu franchise stores to various third

2    parties.  Bambu franchise stores are referred to collectively as the "Bambu Franchise Shoppes,"

3    and individually as a "Bambu Franchise Shoppe."

4         Central to the Bambu Business is its exclusive ingredients and methods for making

5    authentic, unique Vietnamese dessert drinks (known as Chè), along with boba teas and

6    Vietnamese coffee.  The ingredients for these Bambu beverages were made in-house pursuant to

7    confidential and highly-proprietary recipes and preparation methods (the "Recipes").  These

8    Recipes concern, among other things, the Bambu Business' unique coconut-based Chè dessert

9    drinks and the defined ingredients for those drinks.  Each Bambu Franchise Shoppe was permitted

10   to use the Recipes, subject to strict requirements.

11        The Nguyen Family created four Bambu Franchise Shoppes for themselves.  The original

12   and first established Bambu Franchise Shoppe, the "Hostetter Shoppe" located at 1688 Hostetter

13   Rd., Suite D, San Jose, California 95131, is at issue in this case.  On or about September 30, 2014,

14   Bambu Desserts and Drinks Franchise, Inc. entered into a Franchise Agreement ("FA") with

15   Defendant Bambu Delight Hostetter, Inc. ("Bambu Hostetter"), a California corporation with its

16   principal place of business in Santa Clara County.  Jenny's daughter, Defendant Katerina Nguyen

17   ("Katerina"), was the owner of Bambu Hostetter,[2] but Jenny ran the Hostetter Shoppe.

18        The FA defines the Recipes as trade secrets and restricts the disclosure and use of the

19   Recipes.  Section 10A of the FA sets forth a non-compete provision which prevents the operation

20   of any drink or dessert store within 10 miles of the former franchise store for two years after the

21   termination or expiration of the FA.  The term of the FA is three (3) years.

22        In 2015, Jenny sold the Bambu Business to Plaintiff, a Colorado limited liability company.

23   Pursuant to the terms of the parties' Asset Purchase Agreement ("APA"), Plaintiff acquired the

24   assets of the Bambu Business, including, inter alia, the Recipes, trademarks, trade dress,

25   _____

26   [1] Defendant Jenny and her three sisters, along with their brother Tony are collectively referred to as the "Nguyen Family."

27   [2]  Katerina is a California resident.

28   Case No.: 5:21-cv-00512-EJD
     ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION
                                          2

intellectual property, proprietary products, and goodwill associated with the Bambu Business.  The APA assigned to Plaintiff existing franchise agreements, including the FA with Bambu Hostetter. In exchange, the Nguyen Family and the Selling Parties received from Plaintiff $500,000 cash, a 25% membership interest in Plaintiff, and the right to operate their existing Shoppes with no franchise fee or royalty.  There are now over 40 operating stores in Plaintiff's Bambu Franchise in over 20 states and Canada.

From the date of execution of the APA to the present, Plaintiff took steps to maintain the secrecy of the Recipes and other trade secrets.  Among other things, Plaintiff kept the Recipes and other secrets in only a confidential "Recipe Guide."  Franchisees are given a copy of Plaintiff's Recipe Guide only after signing a confidentiality and non-disclosure agreement.  Only one physical copy of the Recipe Guide is provided to each Bambu Franchise Shoppe, and access to this copy is allowed only on a need-to-know basis at each Shoppe.

In July 2020, Bambu Hostetter refused to implement a required point-of-sale ("POS") system and associated applications, required menu signage, and required customer loyalty programs.  Plaintiff also learned that public records identified the CEO for Bambu Hostetter as an individual named Phu Tien Vu—a person Plaintiff did not know and had not authorized to act as a franchisee.  When Plaintiff questioned Jenny about the change in public records, Jenny informed Plaintiff that Phu Tien Vu was the husband of her friend, Chloe Vu ("Chloe"), and that Jenny was offering the Vus a trial run to see if they would purchase the Hostetter Shoppe.  The Vus' son, Defendant James Vu ("Vu"), was also helping to run the Hostetter Shoppe.  Jenny told Plaintiff that the Vus decided not to purchase the store.

The Complaint does not indicate when the trial run began.  According to Jenny, the Vus paid a $100,000 "deposit" to Bambu Hostetter in June 2019.  Secretary of State filings indicate that as of March 15, 2020, Vu's father was added as CEO and Secretary of Bambu Hostetter.  On June 9, 2020, Vu took over both roles from his father.

In September 2020, Plaintiff provided notice to Bambu Hostetter that its FA would not renew and would terminate as of September 30, 2020.  On or around October 1, 2020, Defendant

United States District Court
Northern District of California

1    Lyche, Inc. ("Lyche Corporation") began operating the Hostetter Shoppe as a non-franchise store,

2    without Plaintiff's permission, under the name "LyChè."  Lyche Corporation is a California

3    corporation and identifies its principal place of business as the Hostetter Shoppe's address (1688

4    Hostetter Rd., Suite D, San Jose, California 95131).

5         LyChè is currently occupying the space the Hostetter Shoppe used to occupy, with the

6    same employees, selling the same products, using protected trade secrets, and in violation of a

7    contractual non-compete provision.  Vu, a resident of Santa Clara County, California, is listed as

8    the sole owner and sole director of Lyche Corporation.  Vu is also the current CEO of Bambu

9    Hostetter.

10        Plaintiff asserts six claims: (1) violation of the Defend Trade Secrets Act; (2) violation of

11   the California Uniform Trade Secret Act; (3) breach of contract; (4) violation of Cal. Bus. & Prof.

12   Code section 17200; (5) conspiracy; and (6) intentional misrepresentation.

**B.    Motion for Preliminary Injunction**

Plaintiff seeks the following forms of injunctive relief against all Defendants:

> 1.    An order prohibiting Defendants from disclosing or utilizing Bambu Franchising's confidential recipes and related trade secret information;
>
> 2.    An order prohibiting Defendants from selling any products containing any of the following ingredients, which are the subject of the confidential recipes and are prepared using protected trade secret information: pandan jelly, coconut milk, grass jelly, red tapioca, red, white and mung beans, taro paste, and agar jellos;
>
> 3.    An order prohibiting Defendants from selling any drinks or desserts within ten (10) miles of 1688 Hostetter Rd., Suite D, San Jose, California 95131, in violation of a contractual non-compete provision;
>
> 4.    An order prohibiting Defendants from copying, photographing, duplicating, or disclosing in any way, Bambu Franchising's confidential recipes and related trade secret information to any third-party;
>
> 5.    An order directing the Defendants to identify all persons or entities to whom any of them have disclosed Bambu Franchising's confidential recipes and related trade secret information;
>
> 6.    An order directing the Defendants to produce all

1

2

documentation regarding the transfer of operation of the store located 1688 Hostetter Rd., Suite D, San Jose, California 95131 from Defendant Bambu Delight Hostetter, Inc., to Defendant Lyche, Inc.; and

3

4

5

7.      An order directing the Defendants to produce the recipes for the ingredients of all beverages sold under the name "LyChè" at the store located at 1688 Hostetter Rd., Suite D, San Jose, California 95131.

6

7

8

9

Plaintiff also requests expedited discovery from all Defendants pursuant to Federal Rule of Civil Procedure 26(d)(1).  Vu and Lyche Corporation (collectively, "Vu Defendants") have already agreed to Plaintiff's request for expedited discovery, so Plaintiff's request for expedited discovery is moot as to the Vu Defendants.

10

## II.      STANDARDS

11

12

13

14

15

16

17

18

19

20

21

The Supreme Court has emphasized that preliminary injunctions are an "extraordinary remedy never awarded as of right."  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  To secure a preliminary injunction, Plaintiff must make a clear showing that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest.  *Winter*, 555 U.S. at 20-22.  In the Ninth Circuit, the first element may also be met where there are "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff [which] can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

22

## III.      DISCUSSION

23

24

25

26

Plaintiff contends an injunction is warranted based on (1) Defendants' allegedly intentional and unlawful misappropriation of its trade secrets and (2) Defendants breached the FA non-compete provision.  Further, Plaintiff contends that in the absence of injunctive relief, it will suffer irreparable injury.

27

28

Case No.: 5:21-cv-00512-EJD
ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    Defendants Jenny, Katerina, and Bambu Hostetter (collectively, "Nguyen Defendants")

2    oppose the motion, asserting that they sold the Hostetter location to Lyche Corporation last year

3    and are no longer operating the Hostetter location.  The terms of the sale are set forth in an Asset

4    Purchase Agreement executed on October 1, 2020 (hereinafter "Lyche Asset Purchase

5    Agreement").  Decl. of Katerina Nguyen ("Nguyen Decl."), Ex. P, Dkt. No. 23-3.  The Nguyen

6    Defendants also argue that there is no evidence that they (or any other Defendants) have

7    misappropriated the alleged trade secrets or that the alleged misappropriation caused Plaintiff

8    damages, and further, that the non-compete provision expired on September 30, 2019.

9    The Vu Defendants also oppose the issuance of a preliminary injunction, arguing that (1)

10   there is no privity of contract between them and Plaintiff, and there is no evidence to suggest they

11   owe a duty of confidentiality or are bound by any non-compete agreement; (2) they purchased

12   only the assets of the Shoppe in an arms-length transaction; (3) they have never been provided

13   with and never had access to any of Plaintiff's alleged confidential or trade secret information; and

14   (4) they have independently derived their own recipes from prior experience, experimentation, and

15   information publicly available.  The Vu Defendants also contend that Plaintiff has not proven and

16   cannot prove that there has been or continues to be a risk of irreparable harm, and that the balance

17   of hardships tilts heavily in their favor because an injunction would essentially shut down LyChè

18   and their livelihood.

19        **A.    Trade Secret Misappropriation**

20        To prevail on "a claim for trade secret misappropriation under the Title 18 U.S.C. § 1836

21   and California Civil Code § 3426, a plaintiff must [prove] that: (1) the plaintiff owned a trade

22   secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged

23   the plaintiff."  *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020).  For the

24   reasons stated below, the Court finds that Plaintiff is likely to succeed on its trade secret

25   misappropriation claim.

26

27

28   Case No.: 5:21-cv-00512-EJD
ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION
6

*United States District Court*
*Northern District of California*

1    First, the terms of the FA and the APA are strong evidence that the Recipes are trade

2    secrets.[3]  The language of the FA is particularly compelling because Jenny and the Nguyen Family

3    developed the Recipes, drafted and imposed the FA requirements on franchisees, and then sold

4    Plaintiff the Recipes for significant consideration.

5    The Vu Defendants contend that Plaintiff does not have protectible trade secrets in its

6    recipes or preparation methods, reasoning that recipes for Chè are readily ascertainable through

7    public sources and the ingredients for Plaintiff's drinks are listed on Plaintiff's menu.  As Plaintiff

8    points out, however, it is the proprietary Recipes for making the ingredients for Chè that are in

9    dispute, and the Recipes are not readily ascertainable through public resources.

10    The Vu Defendants also contend that Plaintiff fails to present sufficient facts to show it

11    took reasonable efforts to maintain the Recipe Guide's secrecy.  For example, the Vu Defendants

12    fault Plaintiff for giving franchisees hard copies of the Recipe Guide, which can be easily

13    duplicated and distributed.  The Vu Defendants' argument is unpersuasive.  In *Whyte v. Schlage*

14    *Lock Co*., 101 Cal. App. 4th 1443, 1454 (2002), the Court found all but one claimed trade secrets

15    were reasonably protected because they were not publicly disseminated and were subject to a

16    confidentiality agreement.  *Id.* at 1454.  Here, Plaintiff similarly requires every franchisee to sign a

17    confidentiality and non-disclosure agreement before receiving a Recipe Guide.  The Recipe Guide

18    is conspicuously marked as "CONFIDENTIAL" and the cover page states that reproduction of any

19    part of the Recipe Guide is not allowed without specific written permission from the publisher.

20    Further, only one physical copy of the Recipe Guide is provided to each Bambu Franchise Shoppe,

21    and access to this copy is allowed only on a need-to-know basis at each Shoppe.

22    Second, there is strong circumstantial evidence of misappropriation.  In June of 2019,

23    Lyche Corporation paid Bambu Hostetter a $100,000 "deposit" that granted the Vus the right "to

24    

_____

25    [3] The Vu Defendants contend that Plaintiff has failed to identify all of its trade secrets with
reasonable particularity.  For purposes of Plaintiff's motion for preliminary injunction, Plaintiff

26    relies solely on the trade secrets in its Recipes.  These trade secrets are identified with sufficient
particularity.  The Court will defer consideration of whether the balance of Plaintiff's alleged trade

27    secrets are identified with reasonable particularity.

28    Case No.: 5:21-cv-00512-EJD
ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    engage in the daily operation of the business until October 1, 2020 to learn the business process."

2    Nguyen Decl., Ex. P at 6.  In March 15, 2020, Vu's father was added as CEO and Secretary of

3    Bambu Hostetter.  At various times, Vu and his parents each worked in the Hostetter Shoppe when

4    it was a Bambu Franchise Shoppe.  Moreover, Katerina's October 12, 2020 letter to Vu ("Letter

5    Agreement") confirms that "[s]ince June 13, 2019, the day [Lyche Corporation] began managing

6    the business located at 1688 Hostetter Roade, Suite D, San Jose, California 95131 ('Business'),

7    [Lyche Corporation] has been and shall continue to be solely responsible for any and all liabilities,

8    damages, and claims by third parties, arising from or related to the operation of the Business."

9    Dkt. No. 23-3 at 9.  This Letter Agreement and Chloe Vu's recent deposition testimony are

10   inconsistent with the characterization of the June 2019 $100,000 payment as a "deposit."  *See* Pl.'s

11   Reply at 2-4.  These arrangements were made while the business was still being operated as a

12   Bambu Franchise Shoppe and without informing Plaintiff.[4]  The Nguyen Defendants' lack of

13   forthrightness with Plaintiff supports an inference of trade secret misappropriation.

14          LyChè's ongoing operation is also circumstantial evidence of misappropriation.  LyChè

15   began operating immediately upon termination of the FA at the location formerly occupied by the

16   Hostetter Shoppe, selling the same type of Vietnamese drinks made with the same ingredients as

17   those previously sold by the Hostetter Shoppe.  During her deposition, Chloe Vu admitted that on

18   September 30, 2020, the Hostetter Shoppe was a Bambu Franchise Shoppe, and on the very next

19   day, October 1, 2020, it began operating as LyChè.  Chloe also testified that the employees

20   remained the same and were not re-trained to use any new recipes.

21          The Nguyen Defendants essentially argue that is no direct evidence of Lyche Corporation

22   using Bambu's Recipes.  The Nguyen Defendants emphasize that it is common for businesses

23   selling Vietnamese drinks to use very similar or the same ingredients that Bambu uses (pandan

24   jelly, coconut milk, grass jelly, red tapioca, red, white and mung beans, taro paste, and agar jellos),

25   and therefore Lyche Corporation's use of these ingredients to make LyChè's Vietnamese drinks

26   _____

27   [4] This same evidence is circumstantial evidence of a breach of the contractual duty to maintain the
     absolute confidentiality of trade secret under Section 5 of the FA.

28   Case No.: 5:21-cv-00512-EJD
     ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION

1    does not establish misappropriation.  Moreover, the Nguyen Defendants contend that Plaintiff

2    never provided them or anyone else at Bambu Hostetter with the allegedly proprietary ingredients

3    and methods for making Bambu Desserts and Drinks Restaurants' beverages.  Both Jenny and

4    Katerina represent that they have never seen or received a copy of Bambu's Recipe Guide or any

5    updates to the Recipe Guide.[5]  These representations are disingenuous.  Jenny and her sisters were

6    the ones who developed the Recipes and treated them as trade secrets.  Jenny and her family

7    drafted the FA, which contains various protections for the Recipes.  Bambu purchased the Recipes

8    from Jenny.  Because Jenny created the Recipes, she would have no need to refer to Bambu's

9    Recipe Guide to make drinks for the Hostetter Shoppe or to share the substance of the Recipes

10   with the Vu Defendants.

11         More probative are the Vu Defendants' representations that neither Jenny nor anyone else

12   from her family ever showed any of them how to cook the ingredients for the Bambu desserts and

13   drinks.  Decl. of Diem (Chloe) Vu in Support of Defs. Lyche, Inc.'s and James Vu's Opp'n to

14   Pl.'s Mot. for Prelim. Inj. ("Chloe Decl.") ¶10, Dkt. No. 48-2.  They deny ever working in the

15   Hostetter Shoppe kitchen.  The Vu Defendants also suggest that they could not have observed

16   Jenny cooking the ingredients for the Bambu desserts and drinks because Jenny would cook the

17   main ingredients at home or during hours when the store was closed.  *Id.*  Further, the Vu

18   Defendants assert that their LyChè desserts and drinks are prepared based entirely upon recipes

19   and techniques Chloe learned and improved upon throughout the years.

20         Notwithstanding the Vu Defendants' representations, the Court finds that the weight of the

21   evidence, including but not limited to the circumstances surrounding the "deposit," the name

22   changes on the public records, the Vu's management of the Hostetter Shoppe, the Letter

23   Agreement, and the overnight change to LyChè suggests, more likely than not, that there was trade

24   secret misappropriation.  "[D]irect evidence of misappropriation is rare" and at the preliminary

25   injunction stage, Plaintiff need only show a likelihood of success on its claim, not unassailable

26

27   ────────────────────

[5] The Vu Defendants confirm that they were never shown a copy of the Bambu Recipe Guide.
28

1    proof.  *See WeRide Crop. v. Kun Huang,* 379 F. Supp. 3d 834, 848-49 (N.D. Cal. 2019) (citing

2    *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 331 F.Supp.3d 977, 984 (N.D. Cal. 2018)).

3         The Nguyen Defendants next argue that misappropriation cannot be inferred from the fact

4    that the Vu Defendants worked at the Hostetter Shoppe and are now operating LyChè, reasoning

5    that any such inference would be based on the same faulty reasoning underlying the inevitable

6    disclosure doctrine that California courts have rejected.  "Under the doctrine of inevitable

7    disclosure, 'a plaintiff may prove a claim of trade secret misappropriation by demonstrating that

8    defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets.'"

9    *Whyte*, 101 Cal. App. 4th at 1458.  Here, however, Plaintiff does not allege that there will be

10   inevitable disclosure; Plaintiff alleges and has presented circumstantial evidence that there has

11   already been disclosure and use of its trade secrets.

12        **B.    Fourth Claim for Breach of Non-Compete Provision**

13         "The essential elements of a claim of breach of contract, whether express or implied, are

14   the contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach,

15   and the resulting damages to the plaintiff."  *Green Valley Landowners Assn. v. City of Vallejo*, 241

16   Cal. App. 4th 425, 433 (2015).  For the reasons stated below, the Court finds that Plaintiff has

17   established a likelihood of success on the merits of its fourth claim for breach of the non-compete

18   provision in the FA against all Defendants except Jenny.

19        The FA was entered into between Bambu Desserts and Drinks Franchise, Inc. and Bambu

20   Hostetter.  Katerina executed a "Guaranty and Assumption of Franchisee's Obligations" (Dkt. No.

21   20-2 at 60), and is therefore bound by the terms of the FA along with Bambu Hostetter.  When

22   Plaintiff purchased the Bambu Business, all franchise agreements, including the FA, were

23   assigned to Plaintiff.

24        Section 10A of the FA provides that:

25             [F]or two (2) years after the termination or expiration of this [FA],
               Franchisee shall not carry on, be engaged in or advise in the
26             establishment or operation of any business involving or related to the
               retail sale of drinks and desserts or similar businesses described in
27             subsection (1) above except (a) pursuant to Franchise Agreements

28   Case No.: 5:21-cv-00512-EJD
     ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION

with Franchisor, or (b) if Franchisee is not then a party to any other
Franchise Agreement with Franchisor, only at a site that is at least ten
(10) miles from any Franchised Business (including Franchisee's
former Franchised Business) that is operating or being developed.
Franchisee agrees and acknowledges that this restriction represents
only a limited one on Franchisee's ability to conduct a business and
that the purpose of this covenant is not to deprive Franchisee of a
means of livelihood, and will not do so, but is rather to protect the
goodwill and interest of Franchisor and the System.

Compl., Ex. 1, Dkt. No. 1-1 at 15.  This type of non-compete provision is permitted under

California Business & Professions Code section 16601, which provides, in pertinent part, that

"[a]ny person who sells the goodwill of a business, . . . may agree with the buyer to refrain from

carrying on a similar business within a specified geographic area in which the business so sold, or

that of the business entity, division, or subsidiary has been carried on, so long as the buyer, or any

person deriving title to the goodwill or ownership interest from the buyer, carries on a like

business therein."  Cal. Bus. & Prof. Code § 16601.  Section 16601 is an exception to the general

rule in California that a contract under which a person is prevented from engaging in a profession,

trade or business is void.  *Id.* ¶ 16600.[6]  The exception stated in section 16601 is designed to

prevent unfair competition:

> In the case of the sale of the goodwill of a business it is
> "unfair" for the seller to engage in competition which diminishes the
> value of the asset he sold. In order to protect the buyer from that type
> of "unfair" competition, a covenant not to compete will be enforced
> to the extent that it is reasonable and necessary in terms of time,
> activity and territory to protect the buyer's interest.

*Monogram Indus., Inc. v. Sar Indus., Inc.*, 64 Cal. App. 3d 692, 698 (1976).  "One of the primary

goals of section 16601 is to protect the buyer's interest in preserving the goodwill of the acquired

corporation."  *Hilb, Rogal & Hamilton Ins. Servs. v. Robb*, 33 Cal. App. 4th 1812, 1825 (1995).

//

//

---

[6] The California Supreme Court has recently held that a rule of reason applies to contractual
restraints on business operations and commercial dealings under section 16600.  *Ixchel Pharma,
LLC v. Biogen, Inc.*, 9 Cal.5th 1130, 1150 (2020).

Case No.: 5:21-cv-00512-EJD
ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION
11

United States District Court
Northern District of California

United States District Court
Northern District of California

1

### 1.    Nguyen Defendants

Plaintiff contends that pursuant to Section 10B of the FA, the activities of all Defendants are considered to be activities of the franchisee, and that Defendants' acts of operating an effectively identical retail store out of the same location, selling the same product, to the same customers, and using the confidential, trade secret protected Recipes that had previously been specifically licensed by Plaintiff to its franchisees, is a clear breach of Section 10A of the FA.  The Nguyen Defendants contend that they are not bound by the FA because it was not renewed after its three-year term ended in 2017, which means that the non-compete period ended two years later on September 30, 2019, well before LyChè opened for business.  This argument is not persuasive.

Although the Nguyen Defendants never signed a new franchise agreement, it is undisputed that they continued to operate the Hostetter Shoppe using signs, flyers, posters and other material with the Bambu name and logo.  Furthermore, the evidence shows that Jenny understood she was operating the Hostetter Shoppe pursuant to the FA.  In September 2020, Jenny informed the Vus that she wanted to sell the store, but that Plaintiff would not give the Vus the same favorable arrangement under the FA that the Hostetter Shoppe had.  Chloe Decl. ¶ 13.  There would be no reason for Jenny to discuss arrangements under the FA if the FA had been terminated.  Furthermore, Jenny did not remove the signs, flyers, posters or other material with the Bambu name and logo until just before the Vus opened LyChè.  *Id.* ¶ 14.  This evidence establishes that an implied-in-fact contract existed with the same terms as the FA well beyond the original three-year term.  *See U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) ("[T]he district court correctly held that a valid subcontract existed because the parties' continued performance under the terms of the written contract was sufficient to prove the continued existence of the contract.").

The Nguyen Defendants also appear to argue in the alternative that there has been no breach of the non-compete provision because from October 1, 2020 to the present, Jenny and Katerina have had no involvement in the operation of the newly launched Lyche Corporation's business.  However, Vu unquestionably did.  As the CEO and Secretary of Bambu Hostetter, Vu's

1    activities are deemed to be the activities of Bambu Hostetter under Section 10B of the FA.[7]  Vu

2    became the sole owner and sole director of Lyche Corporation and thus, engaged "in the

3    establishment or operation of any business involving or related to the retail sale of drinks and

4    desserts" in violation of the non-compete provision.  Pursuant to Section 10B of the FA, Bambu

5    Hostetter and Katerina are liable for Vu's violation of the non-compete provision.

6        Lastly, the Nguyen Defendants contend that Jenny cannot be liable for breach of contract

7    because she is not a party to the FA.  In response, Plaintiff contends that Jenny is liable for breach

8    of contract under Section 10B of the FA, which provides as follows:

9            B. Activities of Other Persons

10           The activities of Franchisee's immediate family, Franchisee's
             owners, officers, directors, shareholders, trusts, trustees, subsidiaries,
11           parent companies, partners, agents and employees or any enterprise
             in which any of them owns, directly or indirectly, any equity interest
12           (except for investments totaling less than one percent (1%) of the
             stock of publicly held corporations), for purposes of this Section 10,
13           shall be deemed to be activities of Franchisee. Upon Franchisor's
             request, Franchisee shall obtain the signature of any such persons on
14           a nondisclosure and non-competition agreement in a form acceptable
             to Franchisor.  Franchisee shall use its best efforts to cause such other
15           persons to observe the terms of those agreements.

16   Comp., Ex. 1 at 15.

17       Plaintiff is misreading Section 10B.  That section attributes the activities of the listed

18   individuals and entities to the Franchisee such that the Franchisee is legally responsible for any

19   breach of the FA they may commit.  Contrary to Plaintiff's assertion, Section 10B does not

20   provide a basis for holding the listed individuals and entities directly liable for a breach of the FA.

21   It follows that although Plaintiff has demonstrated a likelihood of success on its contract claim

22   against Bambu Hostetter and Katerina, Plaintiff cannot succeed on the merits of its breach of

23   contract claim against Jenny.[8]

24   _____

25   [7] There is also evidence that Jenny advised in the establishment of LyChè in violation of Section
     10A, and Jenny's actions are deemed to be the actions of Bambu Hostetter under Section 10B.
26   [8] Plaintiff argues in its reply brief that Jenny is equitably estopped from avoiding the contractual
     obligations stated in the FA, citing *Setty v. Shrinivas Sugandhalava LLP*, 986 F.3d 1139, 1142
27   (9th Cir. 2021).  Plaintiff's reliance on *Setty* is misplaced.  In *Setty*, the Ninth Circuit considered
     whether a non-signatory to a contract containing an arbitration provision was equitably estopped
28

1

              **2.**      **Vu Defendants**

2

         The Vu Defendants argue that they are not signatories to the FA, and therefore Plaintiff

3

cannot succeed on the merits of a breach of contract claim against them.  Lyche Corporation,

4

however, contractually assumed the obligations of Bambu Hostetter as of June 2019, as evidenced

5

by the Letter Agreement.  Those obligations included the FA.  As the successor in interest to

6

Bambu Hostetter, Lyche Corporation is contractually bound by Section 10A of the FA.

7

       **C.**      **Irreparable Harm**

8

         When a covenant not to compete is violated, injunctive relief is an appropriate remedy.

9

*See Alliant Ins. Servs., Inc. v. Gaddy*, 159 Cal. App. 4th 1292, 1301 (2008) (affirming preliminary

10

injunction where valid covenant not to compete exists).  *See also Ocean Beauty Seafoods, LLC v.*

11

*Pac. Seafood Grp. Acquisition Co.*, 648 F. App'x 709, 711 (9th Cir. 2016) (finding that breach of

12

a non-compete agreement occasions harm, and "[b]ecause the harm is intangible and difficult to

13

quantify, it qualifies as irreparable") (citation omitted).  As discussed above, Plaintiff has

14

established a likelihood of success on the merits of its claim for breach of the non-compete

15

provision.

16

         In addition, "[e]vidence of threatened loss of prospective customers or goodwill certainly

17

supports a finding of the possibility of irreparable harm."  *Stuhlbarg Int'l Sales Co. v. John D.*

18

*Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).  The Vu's operation of LyChè at the location the

19

Hostetter Shoppe used to occupy and sales of the same type of drinks to the same customers is

20

circumstantial evidence of threatened loss of prospective customers and goodwill.  At least one

21

customer has posted a Google review expressing the opinion that other than the name and logo,

22

everything on the LyChè menu is the same as the Hostetter Shoppe menu.[9]  When a customer who

23

_____

24

from avoiding the obligation to arbitrate and held that the non-signatory was not.  The *Setty*
decision does not support the general proposition that non-signatories claiming the benefits of a

25

contract are equitably estopped from avoiding its obligations.

26

[9]  Defendants' objection to the Google review is overruled.  "The urgency of obtaining a
preliminary injunction necessitates a prompt determination and makes it difficult to obtain

27

affidavits from persons who would be competent to testify at trial.  The trial court may give even
inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable

28

previously went to the Bambu Franchise Shoppe now simply goes to LyChè, viewing the stores as the same, Bambu's sales and its market share are reduced.

Loss of goodwill may also be inferred from the Lyche Asset Purchase Agreement, which specifies that $45,000 of the $100,000 purchase price was for "goodwill."  Nguyen Decl., Ex. P at 6, § 4A.  There was no need for the Vus to pay $45,000 for "goodwill" but for the fact that there was an established Bambu customer base for the Hostetter Shoppe.

Defendants contend that there is no evidence that customers are choosing to go to their shop over a Bambu.  Relatedly, the Vu Defendants contend that Plaintiff cannot be harmed by a loss of customers (even if it were able to show Lyche Corporation took customers away from Plaintiff's shops) because under the APA, Plaintiff is prohibited from opening any Bambu franchise in San Jose.  These arguments only serve to underscore the irreparable harm Plaintiff has suffered.  Plaintiff suffers irreparable harm precisely because there are no other Bambu Franchise Shoppes in close proximity to LyChè.

Defendants contend that Plaintiff's delay in seeking a preliminary injunction undercuts the allegations of irreparable harm.  Defendants reason that Plaintiff knew of the purported violations to the FA in or around August 2020, yet waited until January 21, 2021 to file this lawsuit, and until February 9, 2021 to file the instant motion.  The argument is unpersuasive.  Five months hardly constitutes undue delay, especially during the COVID pandemic.

The Court finds that in the absence of an injunction, Plaintiff will suffer irreparable harm.

**D.      Balance of Equities**

The balance of equities tips sharply in Plaintiff's favor for most of the relief Plaintiff requests.  First, as to Katerina, Bambu Hostetter, and Lyche Corporation, injunctive relief is contractually authorized in the FA as follows:

> Nothing in this Agreement shall be construed as limiting or precluding either party from bringing any action in any court of competent jurisdiction for injunctive or other extraordinary relief,

harm before trial."  *Flynt Dist. 'g Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

Case No.: 5:21-cv-00512-EJD
ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION
15

1

2

3

4

5

> without the necessity of posting a bond (and if bond shall nevertheless be required, the parties agree that the sum of One Hundred Dollars ($100) shall be sufficient bond), in connection with the Marks, Trade Dress, Proprietary Information or Trade Secrets. The parties shall have the immediate right to seek such injunctive or other extraordinary relief at any time, including without limitation, during the pendency of any proceeding. This covenant shall be independent, severable and enforceable notwithstanding any other rights or remedies which such party may have.

6

Compl., Ex. 1 at 23. Second, Plaintiff paid the Selling Parties significant consideration for the

7

Bambu Business. Despite this, Jenny essentially sold the business again, this time to the Vus, for

8

another $100,000, without informing Plaintiff. Moreover, Plaintiff's proposed injunction only

9

requires Katrina, Bambu Hostetter, and successor in interest Lyche Corporation to abide by the

10

terms of the FA and APA.

11

However, the burden of an injunction on the Vu Defendants would be significant. They

12

paid $100,000 to purchase the assets of the Hostetter Shoppe and have invested time and money

13

into remodeling and setting up their business. If the Court were to impose all of the injunctive

14

relief Plaintiff requests, the Vu Defendants might have to close their business and lose their

15

investment of money and time. For example, Plaintiff requests an injunction prohibiting

16

Defendants from selling any products containing any of the following ingredients: pandan jelly,

17

coconut milk, grass jelly, grass jelly, red tapioca, red, white and mung beans, taro paste, and agar

18

agar jellos. Such a prohibition is unwarranted and unduly burdensome: it would prohibit the sale

19

of even one product consisting entirely of one ingredient. As an alternative, the Court will impose

20

a narrower injunction prohibiting only the sale of Chè, which will enable the Vu Defendants to

21

continue to operate their business while also providing adequate protection for Plaintiff.

22

### E.   Public Interest

23

The  public interest is served by protecting trade secrets. *Henry Schein, Inc. v. Cook*, 191

24

F. Supp. 3d 1072, 1078 (N.D. Cal. 2016). Though California has a strong public policy in favor of

25

vigorous competition, that interest "yields to California's interest in protecting a company's trade

26

secrets." *Latona v. Aetna U.S. Healthcare, Inc.*, 82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999).

27

Plaintiff's proposed injunction will protect trade secrets. As discussed above, however, a few of

28

Case No.: 5:21-cv-00512-EJD

ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION

16

United States District Court

Northern District of California

1  Plaintiff's proposed injunctive measure are too wide-ranging, and therefore will not be imposed.

2               **F.**      **Request for Bond**

3         Inasmuch as the FA provides that a bond is unnecessary (Compl., Ex. 1, § 15F(5)), the

4  Court denies all Defendants' request for a bond.

5  **IV.**    **CONCLUSION**

6         For the reasons stated above, the motion for preliminary injunction is GRANTED in part

7  as follows.

8

9              1. Defendants are prohibited from disclosing or utilizing Bambu Franchising's confidential recipes and related trade secret information;

10

11              2. Defendants are prohibited from selling any Chè within ten (10) miles of 1688 Hostetter Rd., Suite D, San Jose, California 95131; and

12

13              3. Defendants are prohibited from copying, photographing, duplicating, or disclosing in any way, Bambu Franchising's confidential recipes and related trade secret information to any third-party.

14

15              4. Defendants' requests for a bond are denied.

16  In addition to the four conditions above, the Katerina and Bambu Hostetter are prohibited from

17  selling any products containing any of the following ingredients: pandan jelly, coconut milk, grass

18  jelly, red tapioca, red, white and mung beans, taro paste, and agar jellos at any site that is within

19  ten (10) miles from any Franchised Business (including Franchisee's former Franchised Business)

20  that is operating or being developed.

21         Plaintiff's request for limited expedited discovery is granted.  No later than May 20, 2021,

22  Defendants shall (a) identify all persons or entities to whom any of them have disclosed Bambu

23  Franchising's confidential recipes and related trade secret information and (b) produce all

24  documentation regarding the transfer of operation of the store located 1688 Hostetter Rd., Suite D,

25  San Jose, California 95131 from Defendant Bambu Delight Hostetter, Inc., to Defendant Lyche,

26  Inc.

27  //

28  Case No.: 5:21-cv-00512-EJD
ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    Further, no later than May 20, 2021, the parties shall file a joint status report to notify the

2  Court whether or not any party intends to pursue alternate dispute resolution pursuant to the terms

3  of the FA (Compl., Ex. 1 at 21-22) and/or the APA (Compl., Ex. 2, Dkt. No. 1-2 at 18).

4    The motions to dismiss currently set for hearing on May 27, 2021 (Docket Nos. 22 and 33)

5  are taken off calendar.

6    **IT IS SO ORDERED.**

7  Dated:  May 7, 2021

8  _____

9  EDWARD J. DAVILA
   United States District Judge